1                    United States District Court

2                   Southern District of California

3   THE ISAIAH PROJECT, INC., et   )
    al.,                           ) Case No. 09-CV-2699 WVG
4                                  ) San Diego, California
                   Plaintiffs,     )
5                                  ) Fairness Hearing
         v.                        ) Tuesday, November 22, 2011
6                                  ) 9:00 a.m.
    CITY OF SAN DIEGO, et al.,     )
7                                  )
                   Defendants.     )
8   _____)

9

10              Before the Honorable William V. Gallo
                 United States Magistrate Judge

11

12   Appearances:

13   For the Plaintiffs: John David Blair-Loy, Esq.
                         ACLU FOUNDATION OF SAN DIEGO AND
14                       IMPERIAL COUNTIES
                         PO Box 87131
15                       San Diego, CA  92138

16                       Robert Scott Dreher, Esq.
                         DREHER LAW FIRM
17                       835 Fifth Avenue, Suite 202
                         San Diego, CA  92101
18
     For the Defendants: Daniel F. Bamberg, Esq.
19                       OFFICE OF THE CITY ATTORNEY
                         1200 Third Avenue, Suite 1100
20                       San Diego, CA  92101

21   Transcriber:      Debra M. Henson, CSR, RPR
                       U.S. Courthouse
22                     940 Front Street, Suite 5190
                       San Diego, CA  92101
23                     (619) 238-4538

24

25   Proceedings recorded by electronic sound recording;
     Transcript produced by Official Court Reporter

1    San Diego, California - Tuesday, November 22, 2011, 9:00 a.m.

2              THE COURT:  Well, we're coming down the home

3    stretch, aren't we?

4              MR. DREHER:  Looks that way, your Honor.

5              THE COURT:  Yeah.  All right.  The matters before

6    the Court this morning are the motion for final approval of

7    the proposed class settlement filed by the plaintiffs.

8              On December the 9th, 2009, plaintiffs initiated

9    this case by filing a complaint in this court, which was

10   amended subsequently on the 20th of July, 2010, alleging that

11   the defendants took and destroyed plaintiffs' personal

12   property in sweeps, raids, or clean-ups which violated the

13   plaintiffs' Fourth and Fourteenth Amendment rights; and

14   defendants of course have responded denying that there was

15   any wrongdoing on their part in answers that were filed on

16   the 21st and the 23rd of December in 2009.

17             On the 23rd of February of this year, the parties

18   filed a joint motion for a provisional certification of a

19   settlement class and preliminary approval of a class action

20   settlement.

21             On the 10th of May, 2011, this Court provisionally

22   certified the settlement class and granted preliminary

23   approval of the class action settlement, stating at that time

24   that the agreement was fair, reasonable, and adequate; that

25   the full notice, the summary notice, and the claim forms, all

1   of which are attached to the agreement, comply with due

2   process because the notices and the forms are reasonably

3   calculated to adequately apprise the class members of the

4   pending lawsuit, the proposed settlement, and their rights,

5   including the right to either participate in the settlement

6   or exclude themselves from the settlement, or to object to

7   the settlement.

8          The class, which is defined -- which I will define

9   below, is numerous, so numerous that the joinder of all class

10   members is deemed to be impractical.

11          The claims of the named plaintiffs are typical of

12   the class claims; there are questions of law and fact that

13   are common to the class and which predominate over any

14   questions affecting only the individual class members; and

15   class certification is superior to other available methods

16   for fair and efficient adjudication of the controversy.

17          And on November the 15th, 2011, just a few days

18   ago, the motion for final approvement -- for final approval

19   of the proposed class settlement was filed by the plaintiffs.

20   Defendants filed no opposition to this motion, and to date

21   there have been no objections to the settlement agreement

22   filed with this Court.  And today, November 22nd, a week

23   after the filing of the motion for final approval, the Court

24   is now holding a fairness hearing.  And I look out into the

25   audience, and I see no one here other than the attorneys for

1    the parties, and of course Mr. Dreher on the phone.  I don't

2    anticipate that there'll be any objections filed here today.

3           The Ninth Circuit has declared that a strong

4    judicial policy favors settlement of class actions.  However,

5    when presented with a motion to finally approve a class

6    action settlement, the judges have responsibility of ensuring

7    the fairness to all members of the class.

8           In this context or in the context of a case in

9    which the parties reach a settlement agreement prior to class

10   certification, which is not the case here, the courts must

11   peruse the proposed compromise to ratify both the propriety

12   of the certification and fairness of the class settlement.

13          In determining whether to approve a class action

14   settlement, the Court must assess whether a class exists and

15   to carefully consider whether a proposed settlement is

16   fundamentally fair, adequate, and reasonable, recognizing

17   that it is the settlement taken as a whole rather than the

18   individual component parts that must be examined for overall

19   fairness.

20          Attorneys' fees provisions included in proposed

21   class action settlement agreements are, like every other

22   aspect of such an agreement, subject to the determination

23   whether the settlement is fundamentally fair, adequate, and

24   reasonable.  Accordingly, to avoid abdicating its

25   responsibility to review the agreement for the protection of

1   the class, the District Court must carefully assess the

2   reasonableness of the fee amount spelled out in a class

3   action settlement agreement.

4         In determining whether to grant approval to the

5   settlement of a class, the standard that the Court must apply

6   is whether the settlement, as I have said before, is

7   fundamentally fair, adequate, and reasonable.  Among the

8   factors that the Court should consider are, one, the strength

9   of the plaintiff's case, the risk, complexity, length, and

10  expense of continued litigation, the amount offered in the

11  settlement, the opinion of competent counsel, the stage of

12  the proceedings and the amount of discovery already

13  undertaken at the time of the settlement, and the reaction of

14  the class members to the proposed settlement.  All these

15  factors have been addressed by counsel in the papers leading

16  up to today.

17        So today, the day of the fairness hearing, the

18  Court hears the unopposed motion for final approval of the

19  class action settlement filed by the plaintiffs.  I have

20  reviewed the record in this case, including the motions and

21  all the supporting papers, the settlement agreement, and the

22  arguments of counsel, the many times that we've been together

23  either telephonically or in person, or in personal visits

24  to -- to inspect sites.

25        As I've indicated, there -- no objections have been

1    formally filed to this agreement.  And offering an

2    opportunity for anyone in the audience to make any

3    objections; and I said it -- I said earlier there -- there is

4    no one here, so there are no objections having been made at

5    this hearing, and based upon my review of the findings, I do

6    find good cause to grant the plaintiffs' motion.

7    Accordingly, the motion for final approval of proposed class

8    settlement filed by the plaintiffs is hereby granted.

9           In granting this motion, I make the following

10   findings:  That the agreement is fair, reasonable, and

11   adequate; the parties adequately performed their obligations

12   under the agreement; plaintiffs' counsel provided notice to

13   the class members in compliance with the agreement, and the

14   notice satisfied the due process requirements as well as

15   requirements under Federal Rules of Civil Procedure Rule 23

16   (e); the notice fully and accurately informed the class

17   members about the lawsuit and the settlement; the notice

18   provided sufficient information so that the class members

19   were able to decide whether to accept the benefits offered or

20   to opt out and pursue their own remedies or to object to the

21   proposed settlement, it provided procedures for class members

22   to file written objections to the proposed settlement, to

23   appear at the hearing to state objections to the proposed

24   settlement, and the notice also provided the time, date, and

25   place of the final fairness hearing.

1        I also find that the plaintiffs and class members

2   are entitled to damages and the named plaintiffs each are

3   entitled to an incentive to -- an incentive award and that

4   certain identified class members are entitled to an extra

5   catastrophic award, catastrophic loss award, and that the

6   attorneys for the plaintiff are entitled to attorneys' fees

7   and costs.

8        It is hereby awarded and adjudged that the class

9   members are defined as follows:  All persons who were

10  deprived of lawfully possessed personal property by one or

11  more of the defendants as a result of the actions described

12  in the first amended complaint.  This order applies to all

13  claims or causes of action settled under the agreement and

14  binds all class members, including those who did not properly

15  request exclusion of the order granting preliminary approval

16  of the class settlement and provisional class certification

17  dated on May the 10th, 2011.  This order does not bind

18  persons who filed timely and valid requests for exclusions;

19  as far as I know, there are none, and, as I said, no one has

20  filed any objections or made any here today.

21       Plaintiff and all class members who did not

22  properly request exclusions are deemed to have released and

23  discharged defendant from all claims arising out of or

24  asserted in this action and claims released under the

25  agreement and are barred and permanently enjoined from

1  asserting, instituting, or prosecuting either directly or

2  indirectly these claims.

3          Defendants shall pay or cause to be paid a total of

4  $160,000 to plaintiffs, which will be placed into a fund to

5  be distributed to the class members as allocated below and to

6  be used to pay the below-approved attorneys' fees, incentive

7  fees, and costs associated with this case.

8          $100,00 of the settlement proceeds shall be and is

9  presently being used by the plaintiff Isaiah Project to staff

10 and operate a storage facility for the benefit of class

11 members and other homeless persons.  The City defendants have

12 provided and shall continue to provide the Isaiah Project

13 with a large warehouse located in downtown San Diego and 500

14 storage bins in accordance with the settlement.  The facility

15 is leased to the Isaiah Project on a month-to-month basis for

16 a period anticipated to be at least one year.

17         $20,000 of the settlement proceeds will be used to

18 compensate class members.  I've defined the class previously.

19 The money shall be distributed to the class members in the

20 following amounts:  $300 to all verified class members; $150

21 to all verified class members who the claims administrator

22 has determined to have suffered a catastrophic loss; and $150

23 to all class representatives.

24         An award to the American Civil Liberties Union and

25 the Dreher Law Firm, who are class counsel, in the amount of

1    $40,000 total for attorneys' fees and costs is fair and

2    reasonable in light of the nature of the work performed, the

3    case itself, class counsel's experience, and the benefits

4    obtained for those in the class.  It should be noted that

5    Robert Scott Dreher, who is on the line and participating

6    telephonically, is entitled to half of these attorneys' fees

7    of $40,000; however, Mr. Dreher has agreed to handle this

8    case pro bono and has donated one-half share -- his one-half

9    share equally to the American Civil Liberties Union and to

10   San Diego Volunteer Lawyer Program.  It also should be noted

11   that Mr. Dreher used his own money in the amount of $3,972.97

12   to pay for all administrative and litigative costs associated

13   with this lawsuit.  It's not often that we see this kind of

14   generosity and selflessness in the legal profession, and Mr.

15   Dreher is to be highly commended for his philanthropy.

16          Pursuant to the parties' request, the Court will

17   retain jurisdiction over this action and the parties until

18   final performance of the agreement.  Any comment from

19   counsel?  Mister --

20          MR. DREHER:  Your Honor, Scott Dreher for

21   plaintiff.  I want to thank Mr. Bamberg, whose tenacity

22   helped bring about such a good settlement, namely the storage

23   facility.  I think without his continued hard work pushing

24   that idea, that never would have happened.

25          Secondly, I think I'd speak for all parties in

1   thanking your Honor.  It's rare to have a court get so

2   personally involved and actively help bring about such a good

3   result, visiting the sites, meeting with us like your Honor

4   did; and so we wholeheartedly thank your Honor, and I know

5   the class members are very respectful and grateful of your

6   Honor's work as well.  So thank you very much.

7            THE COURT:  Thank you.  Mr. Bamberg?

8            MR. BAMBERG:  Yes, your Honor.  While the City

9   would like to formally join, if you will, in the motion

10  that's before the Court -- we totally agree with everything

11  that Mr. Dreher laid out.  And I too would like to thank DBL,

12  Scott, and your Honor for helping us come to this; I think

13  it's a unique and beneficial settlement, so it's a case I

14  think we can all be proud of, and I think the right thing is

15  happening.

16           MR. BLAIR-LOY:  Your Honor, I second everything Mr.

17  Bamberg and Mr. Dreher said and express our personal thanks

18  to the Court and to counsel, Mr. Bamberg, and the City in

19  particular for coming up with what I think is a very

20  innovative solution to a real problem.  And I think that -- I

21  like to think that we all exemplify what is best about the

22  legal profession and the judicial system in solving this

23  problem and that we all came to the table to solve the

24  problem, not to fight over the problem.  So we negotiated

25  properly, cordially, civilly, representing our clients, but I

1     think we all were committed ultimately to the greater good.

2     And, again, I appreciate the -- express thanks to the Court

3     for setting that tone throughout this case.

4            THE COURT:  Thank you.  Well, I also want to echo

5     the comments of everyone expressed here today, and I had

6     prepared a brief, you know, epilogue to this which I'd like

7     to read into the record because I think it may be helpful as

8     efforts are made going down the road to try to find a life

9     after this.  You know, this present lease may be coming to an

10    end soon as I understand it, and I'm hopeful that this

11    project can be continued here and perhaps other locations

12    throughout the city, if possible, so --

13           By all accounts this lawsuit, in my view, has been

14    a win/win situation for all the parties.  I think it's rare

15    in litigation today that anyone can say that -- it's rare in

16    litigation today that anyone can say that, especially the

17    individual corporation or government entity who has been sued

18    for alleged wrongdoing can walk away thinking that they've

19    actually won something in this or were victorious, but I

20    think that's the case here today; I think the City and the

21    San Diego -- Downtown San Diego Partnership can truly say

22    that they are as -- they're winners in this lawsuit just as

23    the plaintiffs are.  This lawsuit, in my view, has truly been

24    a victory for -- for everyone involved on all sides.

25           I also would like to recognize David Ross, the

1    Water Man, who I half expected would be present here today.

2    I'm somewhat disappointed he couldn't make it because he's

3    always -- he always adds a certain flavor or character to any

4    proceeding that he might be involved in.  And of course we

5    all know he's been a fixture in the downtown community for

6    quite some time, and he certainly is a very able, compelling,

7    and persuasive advocate for the city's homeless; and his

8    selfless dedication to improving the human condition of those

9    less fortunate I believe is worthy of high praise.  He

10   sacrifices much for them, and he's not without his own

11   challenges; I recall him telling me not all that long ago

12   that he has a daughter who is seriously ill up in the Los

13   Angeles area, and I'm not sure what her condition is now --

14   she passed away?

15           MR. BLAIR-LOY:  She did pass away, your Honor.

16           MR. DREHER:  Yes, she passed away, your Honor.

17           THE COURT:  Okay.  So that -- that's sad.  And

18   despite all that, he was -- he's, you know, still out there

19   helping the less fortunate, and of course he has his own

20   physical ailments that he's -- that he contends with on a

21   daily basis, and he keeps fighting, and I think that is

22   worthy of high praise, and he's out there providing a voice

23   for those who don't have one.  So I'd like to thank him for

24   his tireless efforts in making all this come to pass because

25   I think he's as much a part of this as anybody.  I'd also

1    like to express my appreciation to Gerry Limpic, who's the

2    Executive Director -- is it the Isaiah Project that he's --

3              MR. DREHER:  Yes, sir.

4              MR. BLAIR-LOY:  Yes, your Honor.

5              THE COURT:  -- director of the Isaiah Project.  And

6    of course he's the vision and creative genius behind that

7    check-in center down there and providing the kind of

8    assistance, the very compassionate assistance that everyone

9    needs.  He has I think provided a valuable service by -- by

10   virtue of his just being there and talking to these people

11   and providing them with the kind of mentorship that they

12   need.  So I'd like to personally thank Mr. Limpic for all

13   that.

14              I'd also like to thank the attorneys here, Mr.

15   Blair-Loy, who's present, Mr. Bamberg, who's also present,

16   Mr. Gibbons, who is not, and of course Mr. Dreher on the

17   phone.  In my, you know, very long, long two-year tenure on

18   the bench, I've -- I've come across a lot of attorneys, even

19   in that short period of time, on the civil side, and not all

20   of them come to -- come to court or walk into my chambers

21   when we're trying to settle case with the kind of attitude

22   and resolve that the attorneys in this case have had.  And

23   it's been a true pleasure and a true honor for me to have

24   been involved, however minimally I have been involved in this

25   case, with such, you know, capable and fine attorneys, filled

1    with integrity, and filled with the -- the desire to do the

2    right thing and not necessarily be contentious because that's

3    what attorneys oftentimes do just for the sake of being that

4    way, and for no good reason, and it doesn't really help their

5    client in the process, but they think that they have to be

6    adversarial, and so they are.  And all of you, those present

7    and those on the phone, approached this litigation not as

8    traditional, you know, adversaries but really in a

9    cooperative spirit that, as you said, Mr. Blair, a few

10   minutes ago, really kind of restores the faith that sometimes

11   we jaded and cynical judges have in the legal profession

12   because we see it so often where people are just bickering

13   and nitpicking and being petulant for no reason; that -- you

14   know, that didn't happen.  Now, maybe it happened behind the

15   scenes a little bit, but at least around me, I got the sense

16   that all the attorneys were striving for the same goal, and

17   that was not -- not necessarily trying to, you know, be, you

18   know, one up on the other but striving towards the same goal,

19   and that is trying to improve the -- the lot of our homeless

20   here in San Diego.  And I really do think that you all

21   accomplished that here today and over the last year or so

22   that this litigation has been involved.

23          And, Mr. Dreher, I personally want to thank you

24   for, you know, doing this pro bono, and donating your -- your

25   money back, your fees back to worthwhile causes I think is a

1    true testament to -- to your -- your motives here, and the

2    motives weren't necessarily to enrich yourself but to -- to

3    really help the homeless people here in San Diego, and so I

4    want to thank you for that.

5              And I also want to echo what you said, Mr. Dreher,

6    and I do especially want to thank you, Mr. Bamberg, because I

7    honestly believe that without your input here and your sort

8    of leading the charge down at the City that this settlement

9    would not have been possible, certainly not in the way that

10   it was reached here today.  The check-in center, while it may

11   not necessarily have been your idea -- you got it -- you may

12   have stolen it from the L.A. experience -- but, you know,

13   making that happen here in San Diego for the last eight or

14   nine months that it's been up and running I think is a real

15   coup for the city, I think it's a real coup for the members

16   of this class and all the homeless, who have benefited so

17   greatly.  There are success stories after success stories

18   that people now can put their belongings in a safe and secure

19   place while they go out and look for a job, which is really

20   what everybody wants; I imagine that most homeless people

21   really want to improve their situation in life, and, you

22   know, one of the first steps is getting cleaned up and being

23   able to go out and find an job where you can support yourself

24   and get off the streets and find suitable housing, and I

25   think that this is the first step.  It seems like it's a

1   modest -- it's a modest improvement, but when all you have is

2   a -- is a shopping cart filled with belongings and that's all

3   you have in life, and you either have to put that out in the

4   streets while you go take a shower or go get something to eat

5   or go for a job interview and not knowing whether when you

6   come back outside if it's going to be there or not is a real

7   concern for most of these people.  And I notice in looking

8   through the papers that some of the homeless who had

9   catastrophic losses -- I mean one woman was carrying around

10  for a couple decades the ashes of her mother that were lost,

11  and, you know, that may not seem like a lot, but it is to

12  some people, and losing family photographs and heirlooms are

13  what may have kept many of these people going.  And knowing

14  that that's safe and secure while you go out and try to look

15  for a job I think is huge; I think that it's a great benefit.

16  And, Mr. Bamberg, I attribute a lot of that to your efforts.

17  And I saw that -- that diagram you gave me; it gave me a

18  headache trying to follow it through the bureaucratic process

19  in the city, and I never saw anything that was so

20  complicated.  It may explain in many respects why we're in

21  the situation that we're in, but you were able to

22  short-circuit some of that and get it done.  And so I think

23  the City of San Diego is truly in your debt, and you're a

24  fine example of what a -- a dedicated and conscientious, you

25  know, government employee should be and government attorneys

1    should be, and everyone should be proud of you down at the

2    City Attorney's Office.  Oftentimes government employees are

3    getting a bad rap these days, you know, that we're the -- I'm

4    a government employee -- the government employees are the

5    reason for the economic problems that governments are -- are

6    experiencing, and I happen to think it's just the opposite.

7    I think if anybody on the streets followed around a

8    government employee for day or a week, they would see that

9    they're getting -- the taxpayer's getting more than its

10   money's worth out of each and every government employee, and

11   that's certainly true with you, Mr. Bamberg, and you should

12   go back and ask for a raise.  Put that on the record so you

13   can take it back with you.

14          And, Mr. Blair, my comments to you are, you know,

15   the ACLU sometimes gets a bad rap in the newspaper of

16   defending causes that sometimes seem silly or anti-American,

17   but defending the rights of individuals in causes like that I

18   think, regardless of what side of the political aisle you

19   fall on, end up making the government and our society a

20   better place, regardless of the outcome, because it certainly

21   makes sure that government is not above the law, and keeping

22   government and government employees accountable I think is a

23   good thing.  If we didn't have the ACLU and other

24   organizations like you, I hesitate to say, you know, I'm not

25   sure what our country might look like.  But I'd like to think

1    we could self-police, but sometimes we need someone from the

2    outside to do that for us, and so I applaud you for your

3    efforts in this case as well.

4            And lastly, I'm also aware of the fact that the

5    Water Man Check-In Center, as I alluded to a few minutes ago,

6    is coming towards the end of its lease, and I know that there

7    are efforts underway to raise money and find a means to keep

8    that lease going and perhaps even expand this operation, and

9    I want to throw my full support, to the extent that I can,

10   behind those efforts, and I would certainly urge the City and

11   any benefactors who would like to come forward to keep this

12   very worthwhile project going to find a way to do that.  I

13   think the City gains more by having this operation up and

14   running than it does by whatever funds are expended to keep

15   it running.  I think it's -- we end up gaining more than we

16   give out, and so I fully encourage all those involved to --

17   to try to find a way to keep this -- this project running for

18   a long time to come.  I don't see the homeless situation ever

19   going away; there's always going to be homeless, for whatever

20   reason, and allowing those individuals an opportunity to --

21   to improve their lives and to find jobs and to have a place

22   to keep their provisions and personal possessions safe and

23   secure for even a short period of time can certainly go a

24   long way in making -- getting someone off the streets and on

25   to a more productive life.

1          So with all of that, I want to commend everyone

2     involved in this lawsuit, the plaintiffs themselves who

3     initially showed up for the first ENE -- as I recall, we had

4     a very -- a very exuberant bunch that -- you know, and don't

5     judge a book by the cover; many of those folks that were here

6     that day in court were very articulate, very intelligent

7     individuals that could express themselves quite well, and

8     certainly when I went down and visited the sites and spoke to

9     some of the homeless out on the streets, my impressions

10    didn't change.  They may be a little dirty, they may not be

11    wearing the finest clothes, but they certainly have -- have

12    thoughts and experiences and can express those thoughts and

13    experiences rather well.  They just needed a voice, and they

14    found one in the attorneys here and Mr. Ross and Mr. Limpic,

15    and I think all in all, this has been a -- this program has

16    been an unqualified success, and I believe this lawsuit has

17    been an unqualified success for everyone involved.

18          So with that, is there anything else from either

19    side?

20          MR. BLAIR-LOY:  Your Honor, I just wanted to --

21          MR. DREHER:  No, thank you, your Honor.  We

22    appreciate -- actually, your Honor, there is one.  This is

23    Scott Dreher again.  Perhaps we could set a time ex parte off

24    the record to -- the counsel and the Court to discuss the

25    meaning of the plaque in your Honor's office chambers.

1          THE COURT:  Did I --

2          MR. DREHER:  I do believe that was part of the --

3          THE COURT:  Did I --

4          MR. DREHER:  -- overall deal.

5          THE COURT:  I don't recall.  Was that on the

6     record?

7          MR. DREHER:  That's not on the record, off the

8     record.

9          THE COURT:  Okay.  Well, let's -- let's set up a

10    time and date for that, maybe over -- over beers.

11         MR. DREHER:  That would be fantastic.

12         THE COURT:  All right.

13         MR. BLAIR-LOY:  I second that motion, your Honor.

14    And I just want to say very briefly, the settlement, as the

15    Court recognized, provides substantial cash and

16    cash-equivalent benefits to the class; but above and beyond

17    that, it provides something you can't put a price on, which

18    is dignity, the dignity of having a safe place to store your

19    belongings and begin to rebuild your life.  And I want to

20    thank your Honor for -- and I feel presumptuous even doing so

21    because it's -- I shouldn't -- I don't want to assume that

22    you would ever do differently -- but I want to thank your

23    Honor for providing our clients with so much dignity in

24    person and through the process both at the ENE, as you

25    mentioned, and in meetings and site visits.  I can't tell you

1    how much it means to people like our clients simply to be

2    treated with dignity by people in authority, and your Honor

3    exemplified that in the best way.  So I thank you personally

4    from -- from me.

5              MR. BAMBERG:  I had the same thing to say, your

6    Honor.  Thank you very much.

7              THE COURT:  You're welcome.

8              MR. BAMBERG:  I think that DBL's point about

9    dignity is extremely important, and you can see how the

10   customers of the check-in center are treated with dignity,

11   and I hope we can continue this thing.  We -- it's -- we have

12   to be creative and imaginative on this end of it too.

13   Without going into detail, I'm working toward that end as

14   much as I'm permitted to, and hopefully we'll succeed with

15   it.  But I also want to know who's going to set the ex parte

16   appearance; is that going to be you, Scott?

17             MR. DREHER:  I'll be glad to set that up for some

18   time that works for all parties.

19             THE COURT:  All right.  Whenever you get back.

20             MR. BAMBERG:  Great.  We're going to need you in

21   this country when we do it, Scott.

22             MR. DREHER:  I definitely will be there.

23             MR. BAMBERG:  Thank you, your Honor.

24             THE COURT:  All right, folks.

25             MR. BAMBERG:  Thanks, everyone.

1          THE COURT:  I think that wraps it up.

2          MR. BLAIR-LOY:  Thank you, your Honor.

3          THE COURT:  Thank you.

4          MR. DREHER:  Well done.  Thank you all.  Bye.

5      (The proceedings were concluded.)

6

7      I, Debra M. Henson, an Official Court Reporter in and

8   for the United States District Court for the Southern

9   District of California, certify that the foregoing is a true

10  and correct transcription of the electronic sound recording

11  of the proceedings in the above-entitled matter, transcribed

12  to the best of my ability.

13

14  /s/ Debra M. Henson                  11-30-11
    Official Court Reporter              Date
15  and Transcriber

16

17

18

19

20

21

22

23

24

25